Florence E. AUBREY, as natural guardian and next friend of John C. DeMasse and Charles H. DeMasse, minors

v.

Elliot L. RICHARDSON, Secretary, Health, Education and Welfare, Appellant.

No. 71–1538.

United States Court of Appeals, Third Circuit.

Submitted April 10, 1972.

Decided June 6, 1972.

Kathryn H. Baldwin, Dept. of Justice, Washington, D. C., and Victor L. Schwartz, Asst. U. S. Atty., Philadelphia, Pa., for appellant.

John Justin McCarthy, Norristown, Pa., for appellee.

Before HASTIE, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal in an action arising under the Social Security Act, 42 U.S.C. § 405(g), presents, for initial impression in this circuit, an interpretation of 20 C.F.R. § 404.705, which creates a presumption of death after seven years' unexplained absence for the purpose of determining the rights of another to benefits under § 202 of the Act. The Secretary declined to apply the presumption, and denied the benefits. The district court reversed. The Secretary has appealed.

Claimant filed an application on January 14, 1969, for surviving child's insurance benefits for her two minor children pursuant to 42 U.S.C. § 402(d) (1). Her application was denied initially on the ground that she had failed satisfactorily to establish the death of her previous husband, John W. DeMasse, the father of the two children.

She requested a hearing, at which the following evidence was adduced: claimant was married to DeMasse in 1952, and had separated from him "at least twelve times." Her numerous suits for nonsupport resulted in DeMasse's receiving several short jail terms culminating in a one-year sentence commencing in June, 1960. DeMasse telephoned claimant on the day of his release, June 8, 1961, but claimant has not heard from him since that date. Attempts to locate him through his friends and acquaintances proved fruitless; the authorities have been unable to find him as well. There has been no record of any activity whatsoever under his Social Security number. Claimant asserted that DeMasse had borrowed money from loan sharks but had not repaid it, and that they had come looking for him prior to

his prison sentence but not after his release. Claimant obtained a divorce in 1962 to marry her present husband. On December 31, 1968, she obtained an *ex parte* decree from the Philadelphia Orphan's Court granting her letters of administration based on the presumed death of DeMasse by reason of his absence for seven years.

After reviewing the evidence, the Hearing Examiner expressly found that "[t]he evidence shows that no direct or indirect evidence of any nature whatsoever, from any source, has been obtained from or about Mr. John W. DeMasse since 1961." He concluded that "[t]he circumstances in the case and all the evidence at hand support the legal presumption that Mr. John W. DeMasse is deceased, the time, place and manner of death being unascertainable by any known person."[1]

Reviewing the case on its own motion, the Appeals Council reversed, emphasizing that 20 C.F.R. § 404.705 establishes a presumption of death after seven years only in the case of *unexplained* absences, and that there was an explanation for the wage earner's disappearance in this case. The Appeals Council reasoned:

> Where the circumstances surrounding the departure of the missing person are such that his absence can reasonably be explained without inferring his death, his absence, notwithstanding its duration, is not "unexplained" within the meaning of the regulations. Death is not presumed where there is contrary evidence which reveals that a logical reason, other than death, exists to explain the absence of the missing individual.

Claimant filed this action seeking review of the Secretary's determination.

---

1. 20 C.F.R. § 404.705 provides:
Whenever it is necessary to determine the death of an individual in order to determine the right of another to a monthly benefit or a lump-sum payment under section 202 of the act and such individual has been unexplainedly absent from his residence and unheard of for a period of seven years, the Administration, upon satisfactory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died.

The district court, correctly perceiving the sole issue to be one of law, reversed the Secretary's decision, holding that the Secretary had "applied too strict a standard in this case." The court concluded that "the contention that a wage earner's disappearance for a period of more than seven years is explained by the suggestion that his absence was occasioned as the result of his attempting to avoid paying child support, is untenable." This appeal by the Secretary followed.

■ The Secretary contends that if he believes that there is a cogent explanation for the disappearance consistent with continued life, he can properly refuse to apply the presumption. Thus, in the Secretary's view, no affirmative evidence that the insured is alive is necessary. We disagree.[2]

The Appeals Council's rationale virtually creates a presumption of life rather than death. There is nothing in the regulation which requires the claimant to refute every reasonable theory or explanation which may be potentially present or which the Secretary may suggest. As the Ninth Circuit has noted, such an interpretation would "place an impossible burden of showing a negative upon an applicant. . . ." Secretary of Health, Education and Welfare v. Meza, 368 F.2d 389, 392–393 (9th Cir. 1966). Thus, the Meza court reasoned that "[t]he most that the applicant can be expected to do is to show . . . that the applicant has no explanation." The court went on to fashion the following rule: "[W]hen the facts show that a person has been absent from his residence and unheard of for a period of seven years, a presumption arises that he is dead." 368 F.2d at 392. See also, Gardner v. Wilcox, 370 F.2d 492, 494 (9th Cir. 1966); Miller v. Richardson, 321 F.Supp. 157, 159 (W.D.Pa.1970).[3]

■ The presumption is not irrebuttable. As the court noted in Gardner v. Wilcox, supra, 370 F.2d at 494, once the presumption is established, "[t]he burden of explanation then shifts to the Secretary, and the presumption can be dissipated 'by proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life.' "[4]

2. The Secretary relies upon Dowell v. Gardner, 386 F.2d 809 (6th Cir. 1967). In Dowell, as here, the adduced facts suggested a plethora of possible explanations for the wage earner's disappearance. The Secretary speculated at the possible persuasive reasons why one in the insured's circumstances might choose to absent himself. Finding several such reasons, the Secretary concluded that the absence was not, therefore, unexplained. The Sixth Circuit merely held that the Secretary's decision was supported by substantial evidence.

Our quarrel is with the Secretary's interpretation of the regulation, not with his analysis of the facts. But though the factual similarity between Dowell and the case at bar are urged on this appeal, we note that Dowell's animosity toward his family was far more manifest: "After being served with process, Dowell burned the house trailer in which the family was residing, containing all the family's food and clothing." 386 F.2d at 810.

3. The Hearing Examiner, who applied the presumption of death in the case at bar, articulated the rationale for the presumption:

It is worth noting that what is really at issue here is something which by definition is not provable with the degree of certainty that many facts are; otherwise there would be no reason for the law to provide for a presumption. This doctrine [arises] out of a perceived need for providing a means for settling the affairs of individuals with some finality, and when a length of time elapses which the law regards as reasonable, and seven years is surely that in this day of quick communication and travel, it is a recognized principle that from circumstances meeting certain standards, a presumption may be raised to take the place of a positively known fact.

4. Thus, in Miller v. Richardson, 457 F.2d 378 (3d Cir. 1972), evidence at the hearing was held sufficient to explain the absence of claimant's husband. There, the husband left his family home shortly after a lady friend with whom he had been seen several times disappeared. He phoned his

■ This standard clearly requires more from the Secretary than mere conjecture as to possible explanations for the wage earner's disappearance. *Meza, supra,* 368 F.2d at 393. When the Secretary chooses to infer from a mass of conflicting facts surrounding an insured's disappearance an explanation therefor, he must support that conclusion "by proof of facts" which do—not merely may—"rationally explain the anomaly of the disappearance in a manner consistent with continued life." Thus, like the court in Christen v. Secretary of Health, Education and Welfare, 439 F.2d 715 (9th Cir. 1971), "we cannot go along with the Department's apparent view that one achieves immortality" by disappearing under circumstances not free from doubt. Indeed, such a view would frustrate the purpose of the presumption and eternally render its effect nugatory in all but the clearest of cases. We therefore agree with the Hearing Examiner and the district court that "the 'presumption of death' [was] not overcome" in this case.

■ Viewing this case against the presumption as we think it should have been applied, we find no substantial evidence to support a contrary conclusion. Indeed, DeMasse was declared dead by the Orphan's Court in 1968. Of course, this *ex parte* finding was not binding on the Secretary[5] nor *res judicata* here. It is not to be completely ignored or discounted, however, for the reality is that this decree of the state court, although *ex parte,* operates as a profound and comprehensive declaration of rights under state and federal law not pertinent to our present purposes. Moreover, what, by force of time, seemed persuasive to a court in 1968 ought *a fortiori* to compel the same conclusion in subsequent years. That eleven years have now passed without word of or from DeMasse can only underscore the propriety of the presumption which the Hearing Examiner and the district court applied.

The order of the district court will be affirmed.

VAN DUSEN, Circuit Judge (dissenting).

I respectfully dissent because of the majority's conclusion (page 785) that there is no substantial evidence to support the Appeals Council's decision, as opposed to that of the Hearing Examiner. This court has recently held in considering the application of the controlling regulation (20 C.F.R. 404.705), that its review of the administrative findings "is limited to 'ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact.'" See Miller v. Richardson, 457 F.2d 378 page 379 (3d Cir.). The findings of the Appeals Council in this case, contained in these extracts from its opinion, are supported by substantial evidence:[1]

"The claimant filed an application for surviving child's insurance benefits on January 14, 1969. In supplemental

---

wife several days after his departure, and indicated "he had left his home and intended to begin a new life in California." The court found that Miller's disappearance was not unexplained, "and that implicit in his departure was an intention to continue living."

5. The reason for this salutary rule is clear:
   if he should so limit his consideration of what is the law to that type of adjudication, he might well be under a statutory duty, if various trial courts in *ex parte* proceedings made mutually exclusive determinations, to apply conflicting rules in identical cases within the same state. In this respect, his mandate is similar to that of the federal courts under the *Erie* rule. King v. Order of United Commercial Travellers, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948).
   Cain v. Secretary of Health, Education and Welfare, 377 F.2d 55, 58 (4th Cir. 1967).

1. R. 35–37, 41–42, 51–54, 71–74. "on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776 (3d Cir., 1957). See 42 U.S.C. § 405(g). My analysis of the record requires rejection of the statement of the

statements dated January 14, 1969, the claimant indicated that she and the wage earner were married on August 2, 1952, in Philadelphia, Pennsylvania; that they had two sons, born in 1953 and 1955; that between August 2, 1952 and June 8, 1961, the date on which the wage earner disappeared and was last seen, they lived together only part of the time, and were separated at least 12 times; and that she sued the wage earner for nonsupport, and a court order for support was issued prior to his disappearance. The claimant further indicated on January 28, 1969, that the wage earner was always changing jobs in an effort to avoid her.

"The wage earner served several short terms in the Philadelphia House of Correction for desertion and nonsupport. On June 8, 1960, he was committed to Holmesburg Prison to serve a one-year prison term for desertion and nonsupport. He was released on June 8, 1961, disappeared, and has not been seen or heard from since by the claimant, the two children, or any of the wage earner's known friends or relatives. The claimant stated that she last saw the wage earner when she visited him at Holmesburg Prison in [April 1961].

\* \* \* \* \* \*

"It is clear from the regulations that a presumption of death arises only when the wage earner is absent *without explanation* from his residence and unheard of for a period of 7 years. Where the circumstances surrounding the departure of the missing person are such that his absence can reasonably be explained without inferring his death, his absence, notwithstanding its duration, is not 'unexplained' within the meaning of the regulations. Death is not presumed where there is contrary evidence which reveals that a logical reason,

other than death, exists to explain the absence of the missing individual.

\* \* \* \* \* \*

"In the instant case, the Appeals Council finds that the wage earner's absence from his former residence is not 'unexplained' within the meaning of section 404.705 of Social Security Administration Regulations No. 4. The wage earner's serious financial and domestic problems, possibly induced in part at least by gambling, together with the fact that he was a fugitive from justice, in combination, provide a very reasonable explanation for his disappearance.

"It is further noted by the Appeals Council that at the time of the wage earner's disappearance he was 28 years of age, apparently in good health, and would now be only 37 years old, or well within a normal life span. Although there is no indication that any friend or relative heard from him during the 7 years after June 8, 1961, this, in itself, is not a sufficient basis for applying a presumption of death, since the regulations clearly do not contemplate that mere successful concealment for 7 years will justify such a presumption.

"The fact that no earnings are entered on his earnings record after June 1960 is not significant, since he may have secured a new social security number under an alias, or worked in jobs not covered by the Social Security Act, or in another country. The successful concealment of his whereabouts does not warrant a presumption that the wage earner has died. Moreover, the presumption of death by the Pennsylvania Court for intestacy purposes, on the basis of more than 7 years' absence is not a proper basis for presuming his death under the Social Security Act, which specifically requires that he be unexplainedly absent and unheard of for 7 years.

district court that ". . . we further conclude that the Appeals Council's findings were not supported by substantial

evidence" (p. 5 of 2/23/71 Memorandum in Civil No. 70–1671, E.D.Pa.).

"It is the decision of the Appeals Council that the evidence of record does not support a presumption that the wage earner is dead . . . ."

The *Meza* opinion, relied on by the majority, points out that the presumption of death where the "individual has been unexplainedly absent . . . for a period of seven years" (20 C.F.R. § 404.705) may be "dissipated . . . by proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life. If evidence of such facts is presented, it is for the Secretary, not the courts, to decide whether to credit the proof, and if it is credited, whether, in light of the evidence, to draw the permissible inference that the missing person is alive" (368 F.2d at 392). See also Dowell v. Gardner, 386 F.2d 809 (6th Cir. 1967).

The record justifies the finding that the presumed decedent would have taken all steps possible to avoid his wife, particularly after serving his first substantial jail term for non-support (one year) and at a time when he was on probation which would be violated by non-support of his wife and children (R. 71).[2] A representative of the Social Security Administration summarized an interview with the former wife on January 28, 1969 (R. 74), as follows:

"She gave a short resume of her life with W/E. They were constantly separating, & she was always battling for support.

"The W/E was always changing jobs in an effort to avoid her. As soon as she discovered the location of his new place of employment, she would wait for him at the plant on pay days. She would also try to have the court ordered support attached from his wages.

"On one occasion, she accidentally met W/E as he was entering a sub-

way train with a female friend. She and a girl friend grabbed W/E by both arms, walked him up subway steps, found a police car and had him arrested for nonsupport.

"It does not appear likely that W/E would contact his wife if his disappearance was planned."

Since the majority has mentioned the *ex parte* finding by Pennsylvania trial court that DeMasse was presumed to be dead, even though conceding that such *ex parte* conclusion is not binding in federal courts (see note 4), it should be noted that under Pennsylvania law the court's function in evaluating the evidence is far more restricted than that of "the Administration" in the applicable federal regulation (note 1 of majority opinion). In McNulty v. General American Life Ins. Co., 153 Pa.Super. 288, 33 A.2d 796, the court said:

"The presumption of death naturally depends upon the circumstances in each case. The sufficiency of the evidence to rebut the presumption, once it is shown to exist, is a question of law: . . . The truth, however, of plaintiff's evidence, upon which the presumption of death is predicated, and every inference fairly deducible therefrom must be assumed by the court in determining that question: . . . ."

I would reverse the district court order and either direct the dismissal of the complaint or, at the least, direct remand of the case for reconsideration of the application of 20 C.F.R. 404.705, to this case in light of the interpretation placed on that regulation by this court. See Securities and Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 88 ff., 63 S. Ct. 454, 87 L.Ed. 626 (1943); Securities and Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 200–201, 207, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

2. Under question 25(b) of the wife's statement on Form SSA–723 (dated 1/14/69), this language appears:

"Do you know of any reason why the missing person, if living, should not reveal his whereabouts?"
"He is a fugitive from justice." (R. 54).