**INSPECTOR GENERAL OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, Petitioner,**

v.

**J.C. GRIFFIN, Jr., et al., Respondent.**

**No. 1:94–misc–28–1 (WLS).**

United States District Court,
M.D. Georgia,
Albany–Americus Division.

May 22, 1997.

William David Gifford, Macon, GA, Katherine R. Shanabrook, U.S. Dept. of Agriculture, Washington, DC, for petitioner.

Timothey Ott Davis, Albany, GA, Alexander J. Pires, Jr., Washington, DC, for respondent.

## ORDER

SANDS, District Judge.

Presently before the Court is the Inspector General's petition for summary enforcement of administrative subpoenas *duces tecum.*

### Background

Respondents include members of the Griffin family, J.C. Griffin, Sr., J.C. Griffin, Jr., Faye Collins, and Ann Glenn, as well as five corporate entities owned by the Griffin family: Griffin Farms, Inc., B & J Company,

Inc., Griffin Oil Company, Inc., Griffin Aviation, Inc., and Griffin Gin and Supply Co. All Respondents, except for Griffin Aviation, Inc., have participated for many years in federal farm programs administered by the Agricultural Stabilization and Conservation Service ("ASCS"), an agency of the United States Department of Agriculture ("USDA").

The Griffin family and businesses received payments for several years through the ASCS programs. An audit conducted by the Office of the Inspector General ("OIG") indicated that the Griffins may have received these monies in excess of ASCS payment limitations.

Thus, after unsuccessfully attempting to persuade Respondents to produce records in order to assist the OIG's investigation of the possible payment errors, the OIG issued administrative subpoenas *duces tecum* to Respondents Faye Collins (subpoena 2990), Draffin & Tucker, C.P.A. (subpoena 2991), J.C. Griffin, Jr. (subpoena 2996), Griffin Farms, Inc. (subpoena 2992), B & J Company, Inc. (subpoena 2993), Griffin Oil Company, Inc. (subpoena 2995), Griffin Aviation, Inc. (subpoena 2998), Griffin Gin and Supply Co. (subpoena 3000), Ann Glenn (subpoena 2994), and J.C. Griffin, Sr. (subpoena 2997).

Respondents objected to these subpoenas, and the instant petition was filed by the OIG.

### Discussion

■ "The general standards that determine the enforceability of an administrative subpoena are well established. Courts will enforce a subpoena if (1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome." *United States v. Westinghouse Electric Corp.*, 788 F.2d 164, 166 (3d Cir.1986) (citing *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112, 119–20 and *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368–69, 94 L.Ed. 401, 416 (1950)). Once this standard has been met by the Government, unless the party opposing enforcement can make a sufficient showing that summary enforcement would abuse the court's process, the Court will summarily enforce an administrative subpoena. *United States v. Teeven*, 745 F.Supp. 220, 225 (D.Del.1990).

### A. Petitioner Has Established The Prima Facie Standard Of Enforceability

#### 1. Subpoenas Are Within Petitioner's Statutory Authority

The OIG is authorized to conduct audits and investigations relating to federal aid programs run by the USDA in order to prevent and detect fraud and abuse. *See* 5 U.S.C.A.App. 3, § 2. OIG is further empowered to issue subpoenas for the production of documentary evidence when necessary for the exercise of its investigative authority. *See* 5 U.S.C.A.App. 3, § 6(a)(4).

■ "Administrative agencies vested with investigatory power have broad discretion to require the disclosure of information concerning matters within their jurisdiction." *Phillips Petroleum Co. v. Lujan*, 951 F.2d 257, 260 (10th Cir.1991) (citing *Morton Salt, supra*, 338 U.S. at 642–43, 70 S.Ct. at 363–64, 94 L.Ed. at 410–411(compelling production even if action was a "fishing expedition")). In addition, an agency's right to investigate need not be predicated upon the belief that a violation has been committed. *EEOC v. Chrysler Corp.*, 567 F.2d 754, 755 (8th Cir. 1977).

■ It is undisputed that the proper administration of the ASCS program is a matter within the jurisdiction of the OIG, and in the instant action, OIG asserts that "serious questions have been raised" about the propriety of over $1.1 million in ASCS payments made to the Griffins. *See Declaration of Charlie Womble* at ¶ 8, 9. Thus, it is well within the statutory authority of the OIG to request disclosure of information regarding this matter.

#### 2. The Subpoenaed Records Are Relevant

■ The standard of relevance for the purpose of enforcing an administrative subpoena is less stringent than the standard set forth in Rule 401 of the Federal Rules of Evidence. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 814–15, 104 S.Ct.

1495, 1501–02, 79 L.Ed.2d 826, 834 (1984) (allowing IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility). In this regard, so long as the information sought is not "plainly incompetent or irrelevant to any lawful purpose" of the OIG, the Court is obliged to enforce the subpoena. *See Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 508–09, 63 S.Ct. 339, 343, 87 L.Ed. 424, 429 (1943). *See also Westinghouse, supra,* 788 F.2d 164, 170 (citing application of this standard to numerous government agencies). The Inspector General Act of 1978 authorizes the OIG:

> [T]o require by subpena [sic] the production of all information, documents, reports, answers, records accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this Act. . . .

5 U.S.C.A.App. 3, § 6(a)(4). Thus, the OIG is given broad discretion in determining what information to obtain through the use of administrative subpoenas.

> In view of the well-established principle of deference to agency discretion in issuing subpoenas and in the absence of contrary legislative history, we believe Congress intended that the courts accept the Inspector General's determination of what information is "necessary to carry out the functions assigned by this Act" so long as the information is relevant to an Inspector General function.

*Westinghouse, supra,* 788 F.2d at 171. In this light, the declaration of OIG Supervisory Auditor Charlie Womble, and the entire record, make clear that the information sought by OIG is relevant to an appropriate OIG function, to wit, the investigation of fraud in the ASCS program.

### 3. The Subpoenas Are Not Overly Burdensome

■ On their face, the subpoenas at issue are not overly burdensome. The subpoenas essentially request business records of the sort normally maintained by an on-going business entity. Respondents, however, object to the OIG's request for records from 1990 and 1991 on the basis that J.C. Griffin,

Sr. who maintained these records has no mental capacity to explain his dealings with the USDA during that period or the record keeping system that he used during those years. Essentially, Respondents are asserting a "right to explain" objection to this portion of the subpoenas. Respondents have cited no authority for such an objection, and the Court is not aware that any such authority exists. At this stage, this matter is not a criminal or civil trial, it is merely an administrative investigation. While J.C. Griffin, Sr.'s mental capacity may have some bearing on his ability to participate in future litigation, it is of no moment in the determination of the OIG's right to inspect documents pursuant to an administrative subpoena.

The Court finds, therefore, that Petitioner has established the prima facie standard for enforcement of the subpoenas at issue.

Respondents, however, argue that even if these requests are otherwise valid, the petition for summary enforcement should be denied as inconsistent with federal regulations insofar as it relates to records made prior to April 1991.

### B. *The Subpoenas Are Consistent With Federal Regulation*

Pursuant to 7 C.F.R. § 708.1, an agricultural producer who receives benefits under an ASCS program, is only required to maintain records relating to such programs for two years. That regulation states:

> For the purposes of the programs in this chapter, no receipt, invoice, or other record required to be retained by any agricultural producer as evidence tending to show performance of a practice under any such program needs to be retained by such producer more than two years following the close of program year of the program.

7 C.F.R. § 708.1 (1996).

The subpoenas in question were issued by the OIG in April of 1993. Respondents therefore contend that the subpoenas may not be enforced to the extent that they request records created prior to April 1991. Respondents essentially argue that because they are not required to maintain these records, they should not be forced to disclose

them. On a common sense level, this argument holds a great deal of merit. Enforcement by courts of subpoenas for records held beyond the regulatory maintenance period would encourage the destruction of records at the earliest moment, while punishing those entities that maintain accurate and extensive record keeping systems. Notwithstanding this dilemma, the Court is inclined to agree with the Tenth Circuit's rationale in *Phillips Petroleum Co. v. Lujan,* 951 F.2d 257 (10th Cir.1991). Phillips Petroleum involved a request for documents by the Department of the Interior in connection with oil and gas leases on federal lands. Pursuant to 30 U.S.C.A. § 1713(b), lessees were only required to maintain records related to a lease agreement for six years. *Id.* at 258. In addition, the lease agreements themselves contained an inspection provision requiring that the lessee "keep open ... for the inspection of any duly authorized officer of the Department ... all books, accounts, maps and records relative to operations and surveys or investigations on the leased lands or under the lease." In this respect, *Phillips Petroleum* is slightly distinguishable from the case *sub judice.* The Tenth Circuit explained, "The inspection clause of the agreement is not limited to records generated within the past six years.... We will not read a limitation into a lease provision which was not part of the agreement between the parties." *Id.* at 260.

■ In the instant action, the Court has not been made aware of a similar inspection clause providing an affirmative duty to disclose under the ASCS framework. However, the OIG clearly has the authority to inspect records made within the two-year limitations period provided in § 708.1, and it is undisputed that agricultural producers are required to disclose such records upon a valid request. Thus, an inherent disclosure duty is created under the ASCS program, and, other than the two year limitation on record keeping cited by Respondents, the Court is unaware of any time limitation on this duty to disclose. Accordingly, the Court believes that the ruling in *Phillips Petroleum* is applicable to this action. The Tenth Circuit held:

> While plaintiff is required to maintain the records for six years ... plaintiff's duty to disclose records is not limited to records which plaintiff could have lawfully destroyed but, instead, has retained.

*Id.* at 260. The Court finds that the two year limitation set forth in 7 C.F.R. § 708.1 in no way limits an agricultural producer's duty to disclose, in response to an otherwise valid subpoena, records still in the producer's possession beyond the two year record keeping window. The Court does not believe that Congress intended to create such a limitation on the OIG's subpoena power when promulgating § 708.1, and the Court is certain that Respondents have not made a sufficient showing that granting the instant petition notwithstanding § 708.1 would abuse the process of the Court.

■ In addition, to the extent that Respondents contend that the two year record keeping regulation creates a two year statute of limitations on any claims based upon Respondents' participation in the ASCS program, such a contention is irrelevant to the instant petition. The Respondents "cannot avoid disclosure of the records simply by asserting that any action [Petitioner] might bring to which the documents relate is barred by the statute of limitations." *Phillips Petroleum, supra,* 951 F.2d at 260–61. *See Powell, supra,* 379 U.S. at 55–59, 85 S.Ct. at 253–256, 13 L.Ed.2d at 118–120 (IRS need not make showing of an act tolling the statute of limitations in order to enforce a summons for documents relating to a period outside the applicable statute of limitations).

## C. *The Accountant–Client Privilege Does Not Apply*

Respondents Draffin & Tucker, C.P.A. were subpoenaed by the OIG for production of certain documents maintained in connection with the provision of accounting services to Griffin Farms, Inc., Griffin Oil Company, Inc., Griffin Gin & Supply Co., Inc., B & J Company, Inc., Griffin Aviation, Inc., J.C. Griffin, Sr., J.C. Griffin, Jr., Faye Collins and Ann Glenn. Draffin & Tucker filed an opposition to the OIG's petition, separate from the other Respondents.

The main contention set forth in Draffin & Tucker's opposition is that the potential existence of an accountant-client privilege, recognized under Georgia state law, precludes them from disclosing the information sought by the OIG. No accountant-client privilege exists under federal law. *Couch v. United States,* 409 U.S. 322, 335–36, 93 S.Ct. 611, 619, 34 L.Ed.2d 548, 558 (1973); *In re Grand Jury Investigation of Schroeder,* 842 F.2d 1223, 1225 (11th Cir.1987); *In the Matter of Newton,* 718 F.2d 1015, 1021 (11th Cir.1983). However, an accountant-client privilege may be recognized under Georgia state law, pursuant to O.C.G.A. § 43–3–32. Therefore, Draffin & Tucker assert that pursuant to Rule 501 of the Federal Rules of Evidence, the privilege may apply in this case as well. Rule 501 states, in pertinent part:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501.

In the instant action, the rule of decision is governed by federal rather than state law. Therefore, Draffin & Tucker's reliance on Rule 501 is misplaced, and their opposition to the OIG's petition is, in this respect, without merit.

In addition, Draffin & Tucker may not object to the petition on the basis of a general prohibition against the disclosure of tax returns by a tax return preparer. Income tax returns are within the scope of an agency's subpoena authority, see *United States v. Newport News Shipbuilding and Dry Dock Co.,* 862 F.2d 464, 469 (4th Cir. 1988), and the U.S.Code and accompanying regulations thus permit the disclosure of such records in response to an agency subpoena. 26 U.S.C.A. § 7216(b)(3); 26 C.F.R. § 301.7216–2(c)(3)(i).

Accordingly, OIG's petition for summary enforcement of Inspector General administrative subpoenas should be, and hereby is, **GRANTED**. To the extent that the information sought under the subpoenas has already been provided to Petitioner, Respondents need not reproduce such information pursuant to this Order.